Moore v. Connelly.

---

No. 25,503.

E. W. Moore and Fred Moore, Partners, etc., *Appellees,* v. G. W. Connelly and A. Loriaux, Partners, etc., *Appellants.*

SYLLABUS BY THE COURT.

Contracts—*Liabilities—Oil-drilling Operations—Evidence—Special Findings.* In an action to recover for oil-drilling operations, the proceedings considered, and *held:* (*a*) It was not error to admit in evidence a letter written by the defendants in which they admitted an amount for which they were liable. (*b*) The evidence was sufficient to sustain the verdict and judgment. (*c*) A complaint that the answers of the jury to special questions were evasive is not sufficient to warrant a reversal where no application was made to require the jury to more definitely answer the questions. (*d*) A general verdict and special findings should always be harmonized, if possible, and every reasonable presumption indulged in favor of the general verdict. A reduction of the general verdict by the court to conform to and harmonize with the special findings was not error.

Appeal from Montgomery district court; Joseph W. Holdren, judge. Opinion filed July 11, 1925. Affirmed.

*Chas. D. Welch,* of Coffeyville, for the appellants.

*James W. Finley, James A. Allen, B. M. Dunham,* all of Chanute, and *Chester Stevens,* of Independence, for the appellees.

The opinion of the court was delivered by

Hopkins, J.: The action was one to recover compensation for oil-drilling operations. The defendants sought to recover damages on account of the carelessness of plaintiffs in the operations. The plaintiffs prevailed, and defendants appeal.

In September, 1920, the plaintiffs, Moore Brothers, entered into an oral contract with the defendants for certain work upon an oil

Evidence, 22 C. J. § 349; Trial, 38 Cyc. p. 1928.

and gas lease owned by the defendants in Osage county, Oklahoma. Plaintiffs were to perform contract drilling work at $2 per foot, and to furnish rig, tools and equipment; also to do extra work beyond the per-foot contract drilling work. No specific number of wells was agreed upon. Plaintiffs drilled three wells at $2 per foot. Well No. 1 was completed as a dry hole and plugged at 930 feet. The rig was moved to another location, and well No. 2 was drilled. It was a producer. Defendants then directed plaintiffs to move back to well No. 1, clean it out and drill it deeper. While endeavoring to do so, plaintiffs lost their tools. They spent 15 days in fishing and were unable to recover the tools and certain of the casing which was in the well. The well had to be abandoned. On direction of the defendants, plaintiffs drilled a third well to a depth of about 1,710 feet. It was dry. A controversy arose over the attempt to drill well No. 1 deeper, for fishing, and for drilling the third well. The parties disagree as to whether plaintiffs, under the oral contract, were to be paid for extra work or extra time on a basis of $40 per 12-hour tower with the rig, tools and equipment and two men; $60 for like tower with three men, or $80 for like tower with four men. These questions were settled by the triers of the facts.

The defendants' chief claim of error is on the admission in evidence of a letter written by the defendants to the plaintiff. The contention is that the letter was in the nature of a compromise, and therefore not admissible. The plaintiffs admit that an offer of compromise would not be admissible, but contend that there were no negotiations whatever looking toward a compromise between the parties, and that the letter in question was rather a statement of fact. The letter reads:

"JANUARY 15, 1921.

*Moore Brothers, Contractors, Chanute, Kansas:*

GENTLEMEN—We are in receipt of your bills for drilling well No. 1-B and moving back to No. 1 to plug, for us in sec. 36-29-11 Osage.

We have checked these bills over very carefully: On the bill for moving back to No. 1 well we have cut out that part of the bill after you dropped the string of casing on account of your casing line breaking, to the time of plugging. On the bill for drilling No. 1-B into the lime we have cut that part from the time you failed to keep the hole bailed and lost your bailer to the time of plugging.

After careful consideration of these bills we have made up our itemized voucher check No. 246 for $3,563.15 to cover the balance in full that we owe you., Yours truly, CONNELLY & LORIAUX.

G By ————."

The defendants cite and rely on *Myers v. Goggerty,* 10 Kan. App., 190, 63 Pac. 296, where it was said:

"An offer or negotiation to compromise should not be regarded as an ad-mission of indebtedness, nor should such fact be used in evidence against the party offering to adjust the matters in dispute. One who makes an offer to compromise should not be prejudiced thereby in his right to insist upon any legal defense he may possess." (Syl. See, also, 22 C. J. 308, 311, 312, where the same principle is enunciated.)

We are of the opinion, however, that the letter contained no state-ment which could reasonably be regarded as being made for the pur-pose of bringing about a compromise. In *Colburn v. Groton,* 66 N. H. 151, 154, it was said:

"A distinction is taken between the admission of particular facts and an offer of a sum of money to buy peace. For, as Lord Mansfield observed, it must be permitted to men to buy their peace without prejudice if the offer should not succeed; and such offers are made to stop litigation without regard to the question whether anything is due or not. . . . But, if it is an inde-pendent admission of a fact, merely because it is a fact, it will be received. . . . An offer by a party to pay a sum of money by way of compromise of an existing controversy, is not to be used as evidence against him. But an admission of particular facts made during a treaty for a compromise may be given in evidence as a confession." (See, also, *Railroad Co. v. Stone,* 78 Kan. 505, 97 Pac. 471; *Kaull v. Blacker,* 107 Kan. 578, 193 Pac. 182.)

It is argued that the verdict of the jury was contrary to the evi-dence. The answers to special questions Nos. 1 and 2 were as fol-lows:

"Q. 1. Do you find that the casing line furnished by plaintiffs broke by reason of its defective condition and permitted the casing to fall back into the well? A. We don't know.

"Q. 2. Do you find that plaintiffs' agent had been notified prior to the breaking of said casing line that it was defective? A. We don't know."

These answers amounted to a finding against the defendants, they having the burden of proof as to the particular matter involved. The answers are equivalent to a denial of proof of the existence of the facts concerning which the questions were asked. The jury, on request, might have been required to specifically answer the ques-tions. No request appears to have been made by the defendants that they be required to do so, and under the circumstances a re-versal on that account would not be warranted. (*Grubb v. Sargent,* 117 Kan. 233, 230 Pac. 1043.)

Complaint is made of the instructions. We are of opinion that, as given, they fairly covered the issues in the case.

A general complaint that the answers of the jury to the special questions were so evasive as to show that the jury was actuated by prejudice is not sufficient to warrant a reversal. Ordinarily, where a question of inconsistency arises between findings made in answer to the special questions, and a general verdict, every reasonable presumption should be indulged in favor of the general verdict. A general verdict and special findings should always be harmonized if possible. (*Seeds v. Bridge Co.,* 68 Kan. 522, 75 Pac. 480; *Wise v. Lillie,* 84 Kan. 86, 113 Pac. 403; *Morrow v. Bonebrake,* 84 Kan. 724, 115 Pac. 585; *Lewellen v. Gas Co.,* 85 Kan. 117, 116 Pac. 221; *Hollingsworth v. Berry,* 111 Kan. 730, 207 Pac. 841, and cases cited; *Calvin v. Schaff, Receiver,* 118 Kan. 196, 234 Pac. 1006.)

The plaintiffs sued for $5,488.41. Among the items making up this amount was one for drilling tools lost, valued at $633.26 and another item of $200 for fishing for a bailer. The answers to the special questions indicated that the jury did not intend to allow plaintiff for these items. But the amount of the verdict indicated they did not properly estimate the amount to be deducted from plaintiffs' claim. The court corrected the error and reduced the judgment accordingly. The defendants contend that the judgment rendered by the court is not a judgment on the verdict, but that the court substituted his theory for what the jury meant to do; that it was based on speculation and deprived the defendants of a jury trial. We do not so regard it. The court, in our opinion, fairly reasoned from the answers of the jury to the special questions submitted to them, that it was the jury's intention to disallow the plaintiffs' claim on these items, and it was not error for the court, in this respect, to harmonize the special findings with the general verdict.

We find no error which would warrant a reversal. The judgment is affirmed.