No. 36,751

OLLAFAE JELF, *Appellant*, v. THE COTTONWOOD FALLS GAS COMPANY, *Appellee.*

M. C. JELF and OLLAFAE JELF, *Appellants*, v. THE COTTONWOOD FALLS GAS COMPANY, *Appellee.*

(178 P. 2d 992)

Opinion filed April 5, 1947.

*Harry K. Allen,* of Topeka, argued the cause, and *L. M. Ascough,* of Topeka, was with him on the briefs for the appellants.

. *H. C. O'Reilly* and *Carl A. Ballweg,* both of Cottonwood Falls, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: Two actions were filed to recover damages resulting from an explosion of natural gas. One action was filed by Ollafae Jelf to recover damages for the loss of a residence building. The other action was brought by the same plaintiff and M. C. Jelf, her husband, to recover for the loss of household goods and personal effects. This is an appeal from the judgment rendered on the second trial of these actions. The actions were consolidated on both trials on the former appeal and are again consolidated on this appeal.

The first trial of the actions resulted in a verdict and judgment for plaintiffs and defendant appealed. We reversed the judgment for trial errors and remanded the case for a new trial on all issues. (*Jelf v. Cottonwood Falls Gas Co.,* 160 Kan. 112, 160 P. 2d 270.) The second trial resulted in a verdict and judgment for defendant.

The issues as joined by the pleadings are set forth at length in our former opinion. The allegations of the pleadings need not be restated but reference is made thereto for purposes of this opinion. Generally stated, the cases were tried on charges of negligence on the part of defendant, which defendant denied. The latter also pleaded contributory negligence on the part of plaintiffs, which the plaintiffs denied.

Upon the issues thus joined the cases were tried. Special questions were submitted to the jury which, including the answers thereto, were:

"1. Was the property of the plaintiffs damaged by the reason of the explosion? A. Yes.

"2. Did the defendant supply gas to the plaintiffs' residence at the time of the explosion? A. Yes.

"3. Did the defendant have knowledge of gas escaping into the residence before the explosion? A. Yes.

"4. Did the defendant inspect the plaintiffs' premises before the explosion? A. Pipe from alley to meter & meter.

"5. If you answer the above question in the affirmative, state how many times they inspected the premises? A. Twice.

"6. If you find that defendant did inspect the plaintiffs' premises before the explosion, state whether defendant shut off the gas before the explosion? A. No.

"7. Did the plaintiff or plaintiffs hire anyone or cause anyone to check or inspect the premises in question for escaping gas and to make repairs that might be required or necessary? A. Yes.

"8. If you answer Question No. 7 in the affirmative, state who were so employed? A. Bill Brown.

"9. Do you find that a person or persons at the instance of plaintiff or plaintiffs, went upon said premises and proceeded to make such inspection, prior to the explosion? A. No.

"10. Did the plaintiffs or either of them, have knowledge or notice of escaping gas prior to the explosion? A. Yes.

"11. If you answer question No. 10 in the affirmative, state approximately for how long a period before the explosion they or either of them had that knowledge? A. Six weeks.

"12. Do you find that the plaintiffs had an automatic hot water heater with pilot light flame alight in operation in said residence at the time of the explosion and for considerable period prior thereto? A. Yes.

"13. State whether or not the plaintiffs continued to use natural gas in said residence after knowing that gas was escaping into the house? A. Yes.

"14. What if anything did the plaintiffs fail to do that they should have done after knowledge of escaping gas or indications thereof were brought to their attention? A. To see that the gas was turned off immediately."

We shall continue to refer to the parties as plaintiffs and defendant.

Plaintiffs' first contention is the trial court erred in overruling their motion for judgment notwithstanding the general verdict. They base the contention on that portion of G. S. 1935, 60-2918, which provides:

"When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly."

They argue the special findings are so utterly inconsistent with the general verdict that the trial court erred in not setting aside the verdict and entering judgment in their favor on the special findings. They insist the first six special findings disclose the defendant was guilty of negligence and that those particular findings are therefore inconsistent with the general verdict. Under the instructions given to the jury those findings did establish defendant's negligence in the following particulars: Defendant examined only the meter and the pipe from the alley to the meter and did not examine the pipes, connections and fittings in the residence after it had been notified twice there was gas leakage from somewhere which was escaping into the residence; that, with knowledge gas was escaping into the residence, defendant failed to shut off the gas before the explosion.

Plaintiffs next contend findings No. 7, 8 and 9 are immaterial for the reason they prove no issuable facts in the case. Let us assume plaintiffs are correct on that point.

What about the remaining special findings? There was no motion to strike any finding on the ground it was not supported by substantial evidence. For the purpose of obtaining a ruling on a motion *non obstante veredicto* all special findings are admitted to be supported by the evidence. (*Taggart v. Yellow Cab Co. of Wichita,* 156 Kan. 88, 131 P. 2d 924.) The last five findings disclose: Plaintiffs had knowledge of the escaping gas for a period of approximately six weeks prior to the explosion; at the time of the explosion and for a considerable period prior thereto plaintiffs maintained an automatic hot-water heater with a pilot light burning; plaintiffs continued to use natural gas in the residence after knowing that gas was escaping into the house; with the knowledge of escaping gas, which plaintiffs possessed, they should have seen that the gas was turned off immediately.

We need not pause to comment on plaintiffs' testimony concerning the pronounced odor of gas which they testified existed in the house during the six-week period. It is sufficient to say that findings No. 10 to 14, inclusive, are consistent with the general verdict and disclose the jury believed plaintiffs also were guilty of negligence. Having found both the plaintiffs and the defendant guilty of negligence the jury rendered a general verdict in favor of the defendant. We thus find no legal inconsistency between the special findings and the general verdict. Manifestly the special findings, considered as a whole, do not overthrow the general verdict. Unless they clearly have that effect the general verdict must stand. (*Montague v. Burgerhoff,* 152 Kan. 124, 102 P. 2d 1031; *Taggart v. Yellow Cab Co. of Wichita,* supra.)

The rule is that a general verdict and special findings should be harmonized, if possible, and that every reasonable presumption is indulged in favor of the general verdict. (*Moore v. Connelly,* 119 Kan. 35, 237 Pac. 900; *Jordan v. Austin Securities Co.,* 142 Kan. 631, 51 P. 2d 38; *Montague v. Burgerhoff,* supra.) In considering a question of inconsistency between the answers to special questions and the general verdict nothing will be presumed in aid of the special findings and every reasonable presumption will be indulged in favor of the general verdict. (*Lesher v. Carbon Coal Co.,* 127 Kan. 34, 272 Pac. 155; *Jordan v. Austin Securities Co.,* supra, p. 649.) Plaintiffs' motion for judgment *non obstante veredicto* was properly overruled.

Plaintiffs next contend question No. 14 was improperly sub-

mitted to the jury for the reason it called for a conclusion of law on the question of contributory negligence and not for a finding of fact. Clearly the question itself did not call for a conclusion of law. It called for an ultimate fact. Did the answer constitute a conclusion of law? It was the province of the jury to determine whether plaintiffs, as well as defendant were guilty of negligence. They were so instructed. Was it not the province of the jury to determine whether plaintiffs failed to do something which they, in the exercise of ordinary care, should have done? On the former appeal we said the question of plaintiffs' contributory negligence was one for the determination of the jury. The jury has now made its findings. We think the jury by finding No. 14 clearly meant to say that under all the evidence in the case it believed plaintiffs, in the exercise of proper care, should have had the gas turned off immediately. That constitutes the jury's finding of an ultimate fact. It is not a conclusion of law. We therefore cannot disregard it.

Assuming, however, question No. 14 or the answer thereto were objectionable for any reason, there was no motion to strike the finding. From the record before us it is not clear any objection was made to the question before it was submitted to the jury. It appears if an objection thereto was made it was only on the ground the question was ambiguous. That objection, if made, clearly was not good. Furthermore, no objection to any finding of the jury was included in the grounds of the motion for a new trial. The result is the answer must stand.

Plaintiffs next call attention to the fact the jury, by a question submitted to the court during the jury's deliberation, indicated it was confused by a portion of an instruction pertaining to defendant's negligence. The question the jury asked was:

"Is it the state law that a public utility company is compelled to *inspect and repair* appliances such as stoves, etc.—and pipes—belonging to customer after gas has passed through meter into pipes owned by customers?" (Our italics.)

The portion of the instruction to which the jury referred and other instructions, in substance, advised the jury: It was negligence for defendant to permit gas to escape from its own pipes and meter and to permit it to accumulate in plaintiffs' dwelling, or to negligently *inspect or repair* defects in the pipes, connections and appliances *owned by either plaintiffs or defendant* after having re-

ceived notice from plaintiffs that gas was escaping in their residence.

After a conference between the trial court and the attorneys the jury was directed to retire with the instructions for further deliberation and was advised to return if it desired to do so.

During the conference between the court and the attorneys, previously mentioned, counsel for plaintiffs renewed a previous request for two instructions. One of them was:

"If the defendant gas company was notified that the gas was leaking into the house of the plaintiff, it was the duty of the gas company to immediately inspect the premises, including the plaintiffs' pipes, fittings and appliances to the end that the cause of the leaking gas might be discovered by it and if the leaks be in the pipe, fittings and appliances owned by plaintiffs to shut off the gas until proper repairs be made."

Plaintiffs emphasize the language pertaining to defendant's duty to shut off the gas. The requested instruction was in harmony with a statement contained in our former opinion in these cases. In that opinion while commenting on instructions which defendant had requested and on the instructions which were given in the former trial we said: "The instructions given on the whole fairly cover the law of this case." (p. 120.) We are now informed the same instructions were given in the second trial.

In the instructions given, the jury, as previously indicated, was advised it would constitute negligence for defendant to permit the gas to continue to enter plaintiffs' dwelling after defendant had notice of its escape. It also should be observed the jury, among other things, expressly found that defendant, after having been notified of the leakage *did not shut off the gas.* (Finding No. 6.) In view of the instructions given and the finding made thereunder we think the judgment should not be disturbed for failure to give the requested instruction.

In some respects the instructions given were more favorable to plaintiffs than the requested instruction. Under the instructions given the jury may have concluded it was defendant's duty *to repair plaintiffs'* pipes, fittings, connections and appliances after defendant had notice of the escaping gas. That, as we understand it, is not the law. It was defendant's duty to properly inspect and to properly keep in repair *its own* pipes, fittings, etc. It was also defendant's duty *to properly inspect* the customer's pipes, connections and appliances, after having sufficient notice of a leak or leaks therein. If a dangerous condition was, or should have been, discov-

ered it then became defendant's duty to shut off the gas until *the customer could have his own pipes, connections and appliances properly repaired.* (*Miller v. Wichita Gas Co.,* 139 Kan. 729, 33 P. 2d 130; *Jelf v. Cottonwood Falls Gas Co.,* 160 Kan. 112, 118, 160 P. 2d 270.) Manifestly, plaintiffs were not injured by that part of the instructions which was more favorable to them than it should have been.

Plaintiffs also requested the following instruction:

"If you find that the defendant gas company had notice of gas escaping into the house of the plaintiffs, and inspected the premises, or neglected to inspect the premises, and shut off the gas until such leak was located and stopped, then you should find that the defendant is guilty of negligence."

Much of what previously has been said applies to this requested instruction. While, in the instructions given, the jury was not told in so many words that it was defendant's duty, under the circumstances stated in the requested instruction, to shut off the gas, the jury was instructed it would constitute negligence for defendant *to permit the gas to continue to enter plaintiffs' dwelling* after defendant had been notified of the leakage.

Plaintiffs concede, in fact they insist, that under the instructions that were given, the jury, among other things, found defendant guilty of negligence in failing to shut off the gas. Under the circumstances we are not inclined to reverse the judgment for failure to give the requested instruction.

The judgment is affirmed.